UNITED STATES *v.* W. X. HUBER Co. (No. 3726)[1]

Unites States Court of Customs and Patent Appeals, March 26, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty*, special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument February 16, 1934, by Mr. Lawrence; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the proper interpretation of a provision in paragraph 407 of the Tariff Act of 1922. Said paragraph reads as follows:

PAR. 407. Reeds wrought or manufactured from rattan or reeds, whether round, flat, split, oval, or in whatever form, cane wrought or manufactured from rattan, cane webbing, and split or partially manufactured rattan, not specially provided for, 20 per centum ad valorem. *Furniture made with frames wholly or in part of wood, rattan, reed, bamboo, osier or willow, or malacca, and covered wholly or in part with rattan, reed, grass, osier or willow, or fiber of any kind, 60 per centum ad valorem;* split bamboo, 1¼ cents per pound; osier or willow, including chip of and split willow, prepared for basketmakers' use, 35 per centum ad valorem; *all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.* (Italics ours.)

Seven pieces of furniture are in evidence, consisting of chairs, tables, a chaise longue, and a footstool, made with frames of wood, rattan, or

[1] T. D. 46994.

bamboo. The furniture is composed in a large part of sea grass and has a substantial quantity of rattan on different portions thereof. Most of the rattan is in the form of plaits, and ornaments the furniture, being of a darker color than the sea grass. In some of the articles the rattan is interwoven with the sea grass and reaches from one portion of the frame to another.

The collector at the port of Los Angeles classified the merchandise under the first above italicized portion of paragraph 407, and assessed the same with duty at 60 per centum. The importer protested the said action of the collector and claimed the merchandise to be dutiable at 45 per centum ad valorem under the last provision of said paragraph. Other claims were made which are not of importance here.

The United States Customs Court sustained the protest of the importer and held the merchandise to be dutiable under the last provision of said paragraph. From the judgment of the said court, the Government has appealed here.

The Government urges that the issue in this case is *stare decisis* under the judgment of this court in *United States* v. *Hartog & Co. et al.*, 17 C.C.P.A. (Customs) 409, T.D. 43863.

In a motion for rehearing by the Government, the attention of the trial court was called to the *Hartog* case, *supra*, and in the decision denying the motion is found the following language:

From a reading of the opinion of the court in that case and the record made on the trial of the issue in this case we find no evidence of conflict. In the *Hartog* case the chairs were shown to have been made with frames covered in part with rattan, whereas neither from a reading of the testimony nor an examination of the samples in evidence in this case does it appear that the rattan frames are covered in whole or in part with either rattan, reed, grass, osier, or willow, and to sustain the collector's classification it must have appeared that the frames were made of one of the kinds of woods enumerated in paragraph 407 and covered wholly or in part with rattan, reed, grass, osier, or willow.

We do not think the decision of the issue in this case is controlled by the decision in the *Hartog* case. The same contention was not pressed there as is pressed here. In that case the rattan was fastened directly to a portion of the frames of the furniture, but was used more or less for braces or for the purpose of strengthening the furniture. Some of the rattan on some of the articles probably also covered the sea grass in substantially the same manner as in a number of the articles before us. It was there argued that the rattan did not cover the frames. The court held that it did cover the frames, in part, which fully answered the contention of the importer in that case. We are not here concerned with the question of whether bracing the frames is covering either the frames or the furniture. Here we have a different situation. For the purposes of this case, we think we may assume that the rattan can only be regarded as covering the *furniture*

in part, and that it does not substantially cover the *frames* by coming in direct contact therewith.

The facts before us require a determination by us as to what Congress meant by the language used. Did Congress intend to require that before furniture, made wholly or in part of rattan and with frames of the material specified, could be dutiable under the 60 per centum provision, the rattan had to cover the *frames* by coming into direct contact with the *frames*, or did it intend that if the furniture was made with frames of the material described, and if the *furniture* was wholly or in part covered with rattan, it would be included within the paragraph? With reference to the issue at bar, we think the latter part of the query states the intent of Congress.

To hold otherwise would lead to such anomalies as would defeat, in a large measure, the purpose of the legislature. For instance, if the rattan must cover the frame in the sense that it must touch the frame, an article may be imported which has a frame of wood, which frame is covered with grass, paper, or some other material, with an additional covering of rattan which may almost completely hide all other covering material We can see no good reason, and none has been pointed out, why Congress should want to so precisely limit the provision as to require that the rattan should cover the frame in the sense that it must come in direct contact therewith.

The portion of paragraph 407, *supra*, herein.construed, is substantially the same as that which was presented by the Ypsilanti Reed Furniture Co. and the Heywood Bros. & Wakefield Co. to the Committee on Ways and Means, House of Representatives. Said companies there urged the enactment of the paragraph as a protection against cheap Chinese hand labor. (See Tariff Information, 1921, Hearings on General Tariff Revision before the Committee on Ways and Means, House of Representatives, part II, page 1206.) It is obvious that weaving the braids of rattan over the grass and around the skirts of the furniture would require substantially the same amount of hand labor as to weave them over and around the frames.

The furniture at bar is covered in part with rattan and we are of the opinion that the quantity of the rattan is not unsubstantial

The judgment of the United States Customs Court is *reversed*.

HATFIELD, Judge, concurs in the conclusion.

### CONCURRING OPINION

LENROOT, Judge, concurring: I concur in the conclusion reached herein by the majority, but I cannot concur in the construction given by it to paragraph 407 of the Tariff Act of 1922.

The language here in question reads:

* * * Furniture made with frames wholly or in part of wood, rattan, reed, bamboo, osier or willow, or malacca, and covered wholly or in part with rattan, reed, grass, osier or willow, or fiber of any kind, 60 per centum ad valorem * * *.

The majority opinion construes the language to mean that, to come within its provisions, *furniture* of the character described must be covered wholly or in part with rattan, etc. I do not so construe the provision. In my judgment, it clearly means that, to bring an article within it, the *frame* must be covered with rattan, etc. The construction given the provision by the majority would, in my opinion, exclude from the 60 per centum duty many articles which, I think, Congress clearly intended should come within the provision. It seems clear that if the language is to be construed as requiring that the *furntiture* must be covered by rattan, etc., the article must come within the definition of furniture before the covering is applied. In the case at bar there are seven different kinds of furniture. A sample of each kind was introduced in evidence in the trial court, and said samples are before us. Each of the pieces of furniture is composed of a frame of rattan, which frame is covered with sea grass and rattan. If, instead of sea grass, the furniture was composed wholly of frames of rattan, covered wholly with rattan, under the majority opinion it could not be classified under the provision in question because, if the covering of rattan were removed, there would be no *furniture* left, but only some frames. In other words, in such case it would require the rattan covering to make the article furniture, hence it could not be held to be furniture covered with rattan.

On the other hand, no incongruity can result from holding the provision to mean that the frame and not the furniture must be covered with rattan, etc., to bring an article within the provision. I do not think it necessary to hold that the rattan must come in actual contact with the frame, for I think the language may be fairly construed to mean that if the rattan covering is over or around the frame, it is sufficient to bring the article within the provision, regardless of whether the rattan is in actual contact with the frame or not.

I have examined all of the exhibits in the case at bar, and find that in each one of them the rattan does pass over and around the frame, and in each exhibit the rattan covering does at some point come in actual contact with the frame. However, as hereinbefore indicated, I do not deem this last fact important, for I think the frames are covered in part with rattan, within the meaning of the word "covered" as used in said paragraph 407, regardless of actual contact with the frames. I do not think it can be said that the frame of a building is not covered by siding because of the fact that building paper is interposed between the frame and the siding, and I do not think it can be properly said that frames are not covered by rattan because there may be a layer of sea grass between the frames and the rattan.

In any event, I am confident that the construction given the provision in question by the majority will prove to be a source of much trouble in the future, and it is for that reason I feel impelled to express my dissent from such construction.